*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re S. THOMPKINS, Minor.

UNPUBLISHED
March 24, 2022

No. 357522
Genesee Circuit Court
Family Division
LC No. 11-127360-NA

Before: CAVANAGH, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Respondent-mother[1] appeals as of right the trial court's order terminating her parental rights to her child, ST. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

In June 2019, the Department of Health and Human Services (DHHS) filed an amended petition requesting ST's removal from respondent and father's care. The petition alleged that respondent overdosed on "heroin, Xanax, and benzos," in front of ST. In addition, the petition alleged that on a separate occasion respondent overdosed on heroin while at a park with father and ST, and that ST stayed with her grandparents after this incident. The petition also alleged that respondent and father's parental rights to two other children were previously terminated because of substance abuse issues and that Children's Protective Services (CPS) had been called in December 2013 for alleged threatened harm and physical neglect of ST. Finally, the petition alleged that at the time the petition was filed, respondent and father were homeless.

The trial court accepted respondent's plea of admission to the allegation in the petition that she overdosed in a park while father and ST were present and thus found there was probable cause to believe one or more of the allegations in the petition were true. However, the trial court did not believe that reasonable efforts were made to prevent ST's removal, and as a result, ordered that ST

---

[1] Respondent-father was also a respondent in this action. Respondent-father died during the trial court proceedings. Accordingly, unless otherwise noted, the term "respondent" refers only to respondent-mother.

remain in the care and custody of respondent and father. The trial court also issued a dispositional order adopting a case service plan that required respondent to, among other things, undergo a substance abuse evaluation, comply with all services requested from that evaluation, comply with substance abuse treatment facility requirements, and submit to random drug screens.

After several review hearings, DHHS moved the trial court in May 2020 to remove ST from respondent's care and place ST in the care and custody of ST's grandparents. DHHS alleged in its motion that respondent had been asked to leave inpatient substance abuse treatment because she failed to comply with the substance abuse facility rules, that respondent had not been participating in outpatient treatment, that respondent had been seen using drugs, that respondent moved into a hotel with father, who was known to still be actively using drugs, and that ST was currently residing with her paternal grandparents as a safety plan. The trial court granted the motion and several review hearings ensued.

In September 2020, the trial court recommended that DHHS file a petition to terminate respondent's parental rights and that the goal be changed to adoption because respondent did not make any progress in her case service plan. In January 2021, a supplemental petition was filed to terminate the parental rights of respondent and father, citing MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). Father passed away from a suspected drug overdose on February 1, 2021.

The trial court held a termination trial with respect to respondent on May 26, 2021 and, on May 27, 2021 found that statutory grounds for termination had been met and that termination was in the child's best interests. This appeal followed.

## II. ANALYSIS

### A. STATUTORY GROUNDS

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). This Court reviews a trial court's factual findings and its determination that statutory grounds for termination of parental rights exist for clear error. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

In rendering its decision, the trial court did not specify which statutory grounds it found had been met. Instead, the trial court stated that there was clear and convincing evidence to terminate respondent's parental rights under "the statutory sections for termination." Accordingly, we proceed as though the trial court terminated respondent's parental rights pursuant to all of the statutory grounds listed in the termination petition, MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). Those sections provide, in relevant part:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Termination of parental rights under MCL 712A.19b(3)(c)(*i*) is proper when "the totality of the evidence amply supports that [the parent] had not accomplished any meaningful change in the conditions" that led to the trial court taking jurisdiction over the minor, *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009), and "there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age," MCL 712A.19b(3)(c)(*i*). Here, though respondent argues that at the time of termination she had rectified the conditions that lead to removal by receiving substance abuse treatment, obtaining housing, obtaining employment, and attending parenting time, the record demonstrates that respondent failed to comply with her service plan, that she failed to make any meaningful change in rectifying her issues, and that there was not a reasonable likelihood that respondent would rectify these issues within a reasonable time.

The primary issue leading to the court's taking jurisdiction over ST was respondent's longstanding substance abuse. In 2011, a petition was filed with respect to two of her other minor children when they were born drug positive for cocaine. Services were provided to mother but a petition to terminate her rights to the two minor children was eventually filed. Mother ultimately released her parental rights to the two children in 2013.

-3-

We first note that though respondent contends that the trial court should not have terminated her parental rights on the basis of her prior termination case,[2] which also involved substance abuse issues, the trial court did not do so here. Instead, the trial court only referenced the prior termination of respondent's parental rights as one reason why respondent had "not shown consistency as to her sobriety." The reference is relevant, given that despite having previously faced the termination of her parental rights to two other children due to her substance abuse issues, respondent still used illegal substances many years later and admitted to overdosing in ST's presence (though two instances were alleged, respondent admitted to only one). Moreover, respondent admitted that there were similarities in the facts that occurred in her prior termination case and the instant matter.

Respondent commendably began inpatient substance abuse treatment in June 2019, shortly after this matter was initiated, and was doing very well. During her inpatient treatment, respondent provided drug screens and was negative for all controlled substances. However, in April 2020, respondent was discharged from inpatient treatment for failing to follow rules. Thereafter, respondent did not participate in any verifiable treatment for a lengthy period of time. Although respondent informed her caseworker that after leaving inpatient treatment she received outpatient treatment at another location, her caseworker was not able to verify this because respondent would not provide a signed release allowing the release of information about respondent's progress to respondent's caseworker.[3] Moreover, after leaving inpatient treatment, respondent failed to report for any of the 22 drug screens scheduled at her referred treatment outpatient facility from June 2020 through the time the termination petition was filed. Respondent's caseworker also was notified in June 2020 that respondent had three positive drug tests at another facility, and that respondent tested positive for unknown substances in September 2020 when admitted to a hospital.

Respondent testified that whenever she left the inpatient substance abuse treatment facility, she would go to wherever father was and that he was still addicted to illegal substances. She testified that for most of 2019 and 2020 she and father were homeless. Respondent admitted that in October 2020, she communicated to her caseworker that she and father would be relinquishing their parental right to ST because they were "not in a good place to care for [ST] in the way she needed and deserved to be cared for." She testified that she wasn't "really doing anything as far as services go" up until father passed away. She testified that she was clean in 2012 for a little while, relapsed, was again clean for the first couple of years of ST's life, relapsed again, then was sober from 2015 through 2019, when she relapsed again. Respondent testified that she was clean while in inpatient treatment during the instant proceedings, then relapsed after she was removed from inpatient treatment and thereafter continued to use drugs until father's death. Just a few short months prior to the termination trial, then, respondent was still struggling with sobriety and was admittedly not complying with her case service plan.

---

[2] A trial court may not terminate parental rights on the sole basis of a prior termination. See *In re Gach*, 315 Mich App 83, 97-101; 889 NW2d 707 (2016) (holding that basing termination of a respondent's parental rights *solely* on a prior termination creates an unconstitutional presumption of unfitness, and therefore striking down as unconstitutional former MCL 712A.19b(3)(*l*)).

[3] Respondent was ordered to sign releases by the trial court during the trial court proceedings.

After father passed away in February 2021, respondent returned to the inpatient substance abuse facility. However, respondent was discharged involuntarily a short time later for choosing not to wear a mask and walking alone in the hallways. Though respondent emphasizes that her second discharge from inpatient treatment was not related to substance abuse issues, respondent fails to understand that the discharge still amounts to a failure to comply with her case service plan. Respondent chose to not follow the requirements that were put in place by the inpatient facility in order for her to receive treatment. After leaving the facility (for the second time), respondent received inpatient substance abuse treatment at another facility, but voluntarily left in May 2021 to move in with a man with whom she had recently started a relationship.

At the time of the termination hearing, respondent reported participating in an outpatient drug treatment program and continuing to live with her new boyfriend. She also reported working "under the table" at a restaurant five days per week and making between $20 and $80 per day. While respondent's steps forward with respect to obtaining housing and employment are admirable, we cannot ignore that she is not living in housing of her own, nor is she able to present verification of her income. Indeed, respondent's caseworkers viewed respondent's new living arrangement as unstable, and considered her employment to be unstable because respondent was working for unverifiable cash while appealing a denial of disability benefits. More importantly, we cannot ignore the evidence showing that respondent did not benefit from her substance abuse treatment.

Respondent used substances throughout the proceedings, unless she was in an inpatient treatment facility. She failed to consistently submit to drug tests and produced several positive drug screens throughout this matter. She failed to adhere to her case service plan throughout the pendency of the case and failed to demonstrate that she broke her "pattern" of substance abuse. This matter began in 2019 and continued for over two years, during which respondent would show some progress, then regress. Even though in the few months before the termination hearing, respondent appeared to be following her case service plan, respondent in the long term failed to demonstrate that she rectified her substance abuse issues or that they could be rectified within a reasonable time.

In sum, since the original petition was filed in June 2019 through the termination hearing in May 2021, respondent failed to accomplish any meaningful change in the conditions that led to the trial court's taking jurisdiction over ST. See *Williams*, 286 Mich App at 272. The trial court thus did not err by concluding that there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering ST's age under MCL 712A.19b(3)(c)(*i*). Because petitioner established grounds for termination under MCL 712A.19b(3)(c)(*i*) by clear and convincing evidence, we need not consider whether petitioner established the remaining grounds for termination. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

## B. BEST INTERESTS

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews for clear error the trial

court's determination of best interests. *Olive/Metts*, 297 Mich App at 40. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *BZ*, 264 Mich App at 296-297.

The trial court's focus is on the child, not the parent, when making its best interests' determination. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). "[T]he court may consider the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality . . . ." when determining whether termination is in the child's best interests. *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). The trial court may also consider other factors, such as "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). In addition, the trial court may consider a parent's substance abuse problems. *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001).

Respondent argues that termination of her parental rights was not in ST's best interests because no evidence supported the conclusion that ST would be better off in foster care than with respondent, respondent and ST had a strong bond, and respondent would be able to provide ST with stability. However, the trial court considered the relevant factors in making its decision, including ST's bond with respondent; ST's need for permanency and stability, *Olive/Metts*, 297 Mich App at 41-42; ST's well-being while in care; respondent's compliance with her case service plan, *White*, 303 Mich App at 714; and respondent's history of substance abuse issues, *AH*, 245 Mich App at 89. The trial court weighed these factors and concluded that ST's stability and permanency outweighed any bond respondent and ST shared. The trial court concluded that respondent could not provide ST with stability and permanency at the time of the termination hearing, in part because respondent lacked stable housing and stable employment. Further, respondent's caseworker testified that she believed that termination of respondent's parental rights was in ST's best interests in part because ST was in care for two years and had a chance to overcome her unpredictable past with structure and stability, which respondent still could not provide.

Respondent further argues that the fact that ST's foster family was more financially well off than respondent was not a valid reason for the trial court to terminate respondent's parental rights. The trial court, however, did not rely on respondent's income as a basis to terminate her parental rights. As noted above, the trial court relied on several factors in making its best interests' determination.

Given respondent's long history with substance abuse issues and relapses, and respondent's inability to obtain suitable housing and employment, it was unlikely that respondent would be able to provide ST with stability or permanency in the near future. The trial court therefore did not clearly err by finding by a preponderance of the evidence that it was in ST's best interests to

terminate respondent's parental rights.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Jane E Markey
/s/ Deborah A. Servitto